```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESTFIELD BANK FSB,

                Plaintiff,

-against-

ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY,

                Defendant.

24-cv-6940 (MKV)

OPINION AND ORDER
DENYING
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

    Defendant Allied World Surplus Lines Insurance Company ("Allied World") moves to dismiss the Amended Complaint of Plaintiff Westfield Bank FSB ("Westfield"). For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. Facts[1]

#### 1. The Parties

    Plaintiff Westfield Bank ("Westfield") is a federally chartered bank with its principal place of business in Ohio. AC ¶ 1. According to Westfield, Defendant Allied World Surplus Lines Insurance Company ("Allied World"), an insurance company, has its principal place of business in New York. AC ¶ 2; see id. ¶¶ 4, 5.

#### 2. The Premium Finance Agreement

    On November 16, 2022, non-party Primary Source Electric ("Primary Source"), a company

---

[1] The facts are drawn from the Amended Complaint [ECF No. 13 ("AC")]. The Court accepts all factual allegations in the Amended Complaint as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts are also drawn from documents that Westfield attached to the Amended Complaint [ECF Nos. 13-1 ("Premium Finance Agreement"), 13-2 ("Notice of Financed Premium"), 13-3 ("Notice of Cancellation"), 13-4 ("Email Exchange"), 13-5, 13-6, 13-7]. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

1

doing business in Colorado, signed a loan agreement with Westfield [ECF No. 13-1 (the "Premium Finance Agreement")]. *See* AC ¶ 6. Specifically, in the Premium Finance Agreement, Westfield agreed to loan Primary Source $454,119.20 to finance all of the insurance premiums for a general liability insurance policy issued by Allied World and an auto insurance policy issued by an affiliate of Allied World. *See* AC ¶ 7; Premium Finance Agreement at 1; *see also* AC ¶ 8. The Premium Finance Agreement states that "NO AUDIT OR REPORTING FORM POLICIES, POLICIES SUBJECT TO RETROSPECTIVE RATING OR TO MINIMUM EARNED PREMIUMS ARE INCLUDED." Premium Finance Agreement at 1.

In exchange for the loan, Primary Source agreed to make monthly installment payments and "assign[ed]" to Westfield "any and all unearned premiums and dividends which may become payable under the insurance policies." Premium Finance Agreement § 2; AC ¶¶ 10, 11. Primary Source gave Westfield "full authority to cancel the insurance policies" if Primary Source failed to make loan payments. Premium Finance Agreement §§ 8, 9; AC ¶ 12.

The Premium Finance Agreement states: "This Agreement becomes a binding contract when LENDER [Westfield] mails a written acceptance to the borrower [Primary Source]." Premium Finance Agreement § 5. Westfield does not specify the date on which it allegedly mailed a written acceptance to Primary Source.

### 3. The Notice of Financed Premium

"On or about November 17, 2022, [Westfield] issued a Notice of Financed Premium to" Allied World [ECF No. 13-2 (the "Notice of Financed Premium")]. AC ¶ 14. In particular, Westfield alleges that, on November 17, 2022, its employee "generated the 'Day End' report used by [Westfield] to automatically generate all notices that need to be sent out relating to any of [its] premium finance arrangements" and "then arranged [for the Notice of Financed Premium] to be

2

printed and sent to [Allied World] via mail at its offices in Connecticut." AC ¶ 14. Westfield alleges "[u]pon information and belief" that Allied World thereafter "received the Notice of Financed Premium at its Connecticut Address." AC ¶ 15.[2]

The Notice of Financed Premium states: "LENDER [Westfield] has entered into a contract with your insured [Primary Source] to advance the premiums on the policy described above subject to the conditions stated herein." Notice of Financed Premium. It provides that "[t]he insured has assigned to [Westfield] any and all unearned premiums and dividends" and that, if Primary Source "default[s]" on its payments to Westfield, Westfield "will cancel the policy in accordance with authority given [to Westfield] by" Primary Source. Notice of Financed Premium; *see* AC ¶ 17. The Notice of Financed Premium further provides that "IN CONSIDERATION OF LENDER ADVANCING THE PREMIUM THE INSURER AGREES," as pertinent here, that if Westfield cancels the policy, Allied World will pay Westfield "A) On fixed premium policies - the gross pro rata unearned premium, and "B) On deposit or provisional policies - the gross unearned premium irrespective of the actual premium earned by audit, report or retrospective rating, as if the premium were fixed." Notice of Financed Premium (emphasis in original); *accord* AC ¶ 16.

The Notice of Financed Premium states that Westfield "MUST BE ADVISED" if the policy "is auditable" or certain other conditions exist. Notice of Financed Premium (emphasis in original). The Notice of Financed Premium states that "BY SIGNING BELOW" Allied World acknowledges its receipt and accepts the terms of the Notice of Financed Premium. Notice of

---

[2] As explained below, Allied World denies that it ever received the Notice of Financed Premium [ECF No. 19 ("Mem.") at 3 n.1)]. Westfield, however, alleges that it believes Allied World received the Notice of Financed Premium because "Defendant subsequently confirmed to Plaintiff that it received a Notice of Cancellation that was sent to Defendant at the same address." AC ¶ 15.

Financed Premium (emphasis in original). The signature line is blank, however, in the copy that Westfield attached to its pleading. *See* Notice of Financed Premium.

    **4. Westfield Paid the Premiums and Thereafter Cancelled the Policy.**

Westfield alleges that, after it sent the Notice of Financed Premium to Allied World, it "made the Loan to [Primary Source] by paying, in full, to the Defendant [Allied World] all of the insurance premiums for the Policy." AC ¶ 18. According to Westfield, "Defendant accepted the full annual premiums for the Policy from Plaintiff and issued and bound the Policy, thereby assenting and agreeing to the terms of the Notice of Financed Premium." AC ¶ 18. After making monthly installment payments to Westfield for a number of months, Primary Source failed to make the payments. AC ¶ 20.

On or about June 9, 2023, Westfield issued "a Notice of Cancellation" to Allied World "via mail" to "the same Connecticut Address" to which, Westfield alleges, Westfield had previously sent the Notice of Financed Premium [ECF No. 13-3 (the "Notice of Cancellation"). AC ¶ 21. Representatives of Allied World confirmed receipt of the Notice of Cancellation via email [ECF No. 13-4 ("Email Correspondence")]. AC ¶ 22. Furthermore, Allied World "subsequently cancelled the Policy." AC ¶ 22; *see* Email Correspondence at 2 ("policy canceled").

    **5. Allied World Performed an Audit and Refused To Refund Premiums.**

Westfield alleges that after the policies it had financed for Primary Source were cancelled, Westfield "reached out to" Allied World, the affiliate that had issued the auto insurance policy, and others "to coordinate the prompt return of the unearned premium." AC ¶ 23. Westfield alleges that the affiliate "refunded unearned premiums." AC ¶ 24. Allied World, however, "informed" Westfield that, after cancelling the general liability policy it had issued to Primary Source, Allied World had mistakenly failed to perform an audit and "would now be performing an audit." AC ¶

4

25; *see* Email Correspondence at 2.  Thereafter, Allied World informed Westfield that, based on the audit, "no unearned premium was outstanding and that, in fact, additional premium was due and owing."  AC ¶ 30.  As such, Westfield alleges, Allied World refused to refund any unearned premium to Westfield.  AC ¶ 30.

**B. Procedural History**

Westfield initiated this case by filing a complaint [ECF No. 1].  Allied World responded by filing a pre-motion letter requesting leave to file a motion to dismiss [ECF No. 9].  The Court granted the request of Allied World to file a motion to dismiss and granted Westfield leave to amend its complaint to address any deficiencies identified in the pre-motion letter before Allied World moved to dismiss [ECF No. 11].

Westfield thereafter filed its operative pleading, the Amended Complaint [ECF No. 13 (the "Amended Complaint" or "AC")].  Westfield attached to the Amended Complaint the Premium Finance Agreement [ECF No. 13-1], the Notice of Financed Premium [ECF No. 13-2], the Notice of Cancellation [ECF No. 13-3], the Email Correspondence between Westfield and Allied World [No. 13-4], and certain other documents.  Westfield did not attach the general liability policy Allied World had issued to Primary Source.

In the Amended Complaint, Westfield asserts a single claim for breach of contract.  *See* AC ¶¶ 35–49.  Westfield alleges that Allied World breached the Notice of Financed Premium, which, Westfield alleges, required Allied World "to refund any gross unearned premium outstanding under the Policy following its cancellation by Lender '<u>irrespective of the actual premium earned by audit, report or retrospective rating, as if the premium were fixed</u>.'"  AC ¶ 41 (emphasis in original).  It seeks $163,770.00 in damages.  AC ¶ 47.

Allied World moved to dismiss the Amended Complaint [ECF Nos. 18, 19 ("Mem."), 20].

Allied World argues that the Notice of Financed Premium is not a valid contract between Westfield and Allied World because it "runs afoul of the past consideration rule." Mem. at 11. Specifically, Allied World argues that Westfield had already promised Primary Source that Westfield would pay the pertinent insurance premiums (as consideration for the Premium Finance Agreement), so its promise to Allied World to pay the same premiums was "past consideration" (*i.e.*, did not constitute consideration) for the Notice of Financed Premium. Mem. at 11–13.

In making this argument, Allied World acknowledges that New York has abrogated the past consideration rule by statute. Mem. at 7. As such, Allied World acknowledges, there is a conflict of laws that requires the Court to determine whether New York law governs this dispute. Mem. at 7. Allied World argues that "the only laws that could apply" are the laws of Colorado, where Primary Source is located, Connecticut, where Westfield allegedly sent the Notice of Financed Premium, or Ohio, where Westfield has its principal place of business. Mem. at 7–11. Westfield relies on not only documents attached to the Amended Complaint, but also the policy that Allied World issued to Primary Source, which is not attached to the Amended Complaint, and other factual contentions in its choice-of-law analysis. *See* Mem. at 7–11.

Allied World also argues that, even if the Notice of Financed Premium is supported by valid consideration, Allied World did not accept the offer from Westfield because it did not sign the Notice of Financed Premium. Mem. at 13–16.

Westfield filed a memorandum of law in opposition to the motion to dismiss [ECF No. 23 ("Opp.")]. Westfield argues that a "fact-intensive" choice-of-law analysis is inappropriate at this stage of the case and that Allied World accepted the Notice of Financed Premium by its conduct. Opp. at 4–8, 8–13. Allied World filed a reply memorandum of law in further support of its motion to dismiss [ECF No. 25 ("Reply")].

6

## II.     LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all factual allegations in the complaint as true and must draw all inferences in the plaintiff's favor. *Id.*; *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it" or "incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court may also consider a document if "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (quoting *Int'l Audiotext*, 62 F.3d at 72).

## III.     ANALYSIS

It is inappropriate to dismiss this case, at the motion-to-dismiss stage, based on the past consideration argument advanced by Allied World. As Allied World acknowledges, that argument fails if New York law governs this dispute. *See* Mem. at 7. As the Second Circuit has explained with approval, "[n]umerous district courts in this Circuit have concluded that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage." *Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (holding that it was premature to determine choice of law on a motion to dismiss). Because the Court "cannot say that [Westfield] has failed to state a claim under at least one of the allegedly applicable laws," it cannot dismiss the case at this stage. *Id.* It is similarly inappropriate to dismiss the case based on the absence of a signature on the copy of the Notice of Financed Premium

7

attached to the Amended Complaint, since Westfield plausibly alleges that Allied World accepted the contract by its conduct.

A.  **The Choice-of-Law Determination Is Premature, and, as such the Past Consideration Rule Is Not a Basis for Dismissal at this Stage.**

The parties do not agree on what state's substantive law applies to this dispute. *See* Mem. at 7–11; Opp. at 5. As the Second Circuit has explained, a plaintiff is "not required to identify" in its pleading "which law [is] applicable" to its claim. *Bristol–Myers Squibb*, 655 F. App'x at 11 (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014)); *see* Fed. R. Civ. P. 8(a)(2). Allied World contends that "the only law that could apply" are "Colorado, Connecticut, and Ohio," and, in all events, the Court need only decide that New York law does not apply to grant its motion to dismiss. Mem. at 7. Westfield counters that this is a dispute between "an Ohio bank (Plaintiff)" and "a New York-based insurer (Defendant)," and it is therefore premature to conclude that New York law does not apply. Opp. at 5.

"A federal court sitting in diversity applies the choice-of-law rules of the forum state," which, of course, here, is New York. *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (quoting *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003)). Under New York choice-of-law rules, "the first inquiry" is "whether there is an actual conflict of law on the issues presented." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Here, as both parties agree, there is a conflict as to the past consideration rule. Mem. at 7; Opp. at 4. In a contract case, New York law generally "looks to the 'center of gravity' of a contract to determine choice of law." *Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). This center-of-gravity test requires the Court to consider, among other things, "five generally significant contacts": "the place[s] of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *United*

8

*States v. Moseley*, 980 F.3d 9, 23 (2d Cir. 2020) (brackets in original) (quoting *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 227, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)).  Public policy considerations may also bear on the analysis.  *Id.*

While Allied World contends that New York law is inapplicable to the Notice of Financed Premium, Westfield has "[not] conceded the inapplicability of such law," and the Court concludes that it is premature to decide this "fact-intensive" question at this stage.  *Bristol–Myers Squibb*, 655 F. App'x at 12–13; *see DarkPulse, Inc. v. Crown Bridge Partners LLC*, 2024 WL 3872725, at *3 (2d Cir. Aug. 19, 2024); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011); *Lively v. Wayfarer Studios LLC*, 2025 WL 1637019, at *19 (S.D.N.Y. June 9, 2025); *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 453 (S.D.N.Y. 2001); *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *5 n.6 (S.D.N.Y. May 19, 2009).  As noted above, Westfield alleges that Allied World is domiciled in New York.  AC ¶ 2; *see id.* ¶¶ 4, 5.  The "domicile" of an alleged "contracting part[y]" is one of the five significant factors under the center-of-gravity test.  *Moseley*, 980 F.3d at 23.  Another significant factor is the place of performance.  *Id.*  Westfield alleges that Allied World performed under the Notice of Financed Premium when Allied World "issued . . . the Policy" to Primary Source.  AC ¶ 18.  Allied World concedes that "the polic[y] [was] issued out of Allied World's offices in New York." Mem. at 9.  In light of these facts, it is far from obvious that New York law does not govern this dispute.

Moreover, "[g]iven the allegations of the complaint, 'discovery may well reveal salient facts bearing on the choice-of-law calculus.'"  *DarkPulse, Inc.*, 2024 WL 3872725, at *3 (quoting *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 43 (1st Cir. 2020)).  In particular, Westfield alleges that Allied World also performed under the Notice of Financed Premium when it cancelled the policy at the direction of Westfield.  *See* AC ¶ 22.  In the Email Correspondence attached to

9

the Amended Complaint, a representative of Allied World (who appears to be located in Texas) relates that the policy was cancelled. Email Correspondence at 2 ("policy canceled"). Discovery might reveal that the cancellation was effectuated in "Allied World's offices in New York," where the policy was issued, Mem. at 9, or somewhere else.

Allied World advances several arguments that certain factors "point away from New York," Mem. at 9, by invoking documents and other factual contentions that the Court cannot consider on a motion to dismiss, *see Chambers*, 282 F.3d at 153–155; *Pyatt v. Raymond*, 462 F. App'x 22, 24 (2d Cir. 2012), as amended (Feb. 9, 2012); *Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 60 (S.D.N.Y. 2023). In particular, Allied World submits with its motion to dismiss the general liability policy it issued to Primary Source [ECF No. 20-1] and argues that it did not cover any risk centered in New York. Mem. at 9. Allied World contends that the Court may consider this document because the Amended Complaint references the policies for which Westfield financed premiums. Mem. at 4 n.2. The policy that Allied World issued to Primary Source, which is not the contract Westfield alleges Allied World breached, is not properly before the Court because it is not attached to, incorporated in, or integral to the Amended Complaint. *See Chambers*, 282 F.3d at 153. Westfield mentions the policies it financed, including its allegations that Allied World issued a general liability policy to Primary Source and, thereafter, cancelled that policy. *See* AC ¶¶ 8, 18, 22. The Amended Complaint does not mention the substance of the policy or otherwise make the "substantial reference" required to put the policy before the Court. *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003); *see also Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). Insofar as Allied World argues that the substance of the policy is pertinent to the choice-of-law analysis, that argument supports the Court's conclusion that such choice-of-law analysis is premature on a motion to dismiss.

Allied World also contends that it did not sign the Notice of Financed Premium but, if it had, "it presumably would have also done so [at] the Connecticut office where [the Notice of Financed Premium] was allegedly received, making Connecticut the presumptive place of contracting." Mem. at 8. The Court cannot weigh this speculative factual contention in favor of concluding that New York law does not govern the Notice of Financed Premium. Discovery will reveal whether Allied World signed any copy of the Notice of Financed Premium and, if so, where. *See DarkPulse, Inc.*, 2024 WL 3872725, at *3.

As Allied World acknowledges, New York has abrogated the rule against past consideration by statute. Mem. at 7; N.Y. Gen. Obl. Law § 5-1105. As such, the past consideration argument advanced by Allied World fails if New York law governs the Notice of Financed Premium. Thus, because the Court "cannot say that [Westfield] has failed to state a claim" based on the past consideration argument "under at least one of the allegedly applicable laws," it cannot dismiss this case on that ground at this stage.[3] *Bristol–Myers Squibb*, 655 F. App'x at 13.

---

[3] There is a further problem with the past consideration argument advanced by Allied World. As both parties agree and the Notice of Financed Premium clearly states, in the Notice of Financed Premium, Westfield promised to pay all of the premiums for a general liability policy for Primary Source in consideration for, among other things, Allied World promising that, if Westfield were to cancel the policy because Primary Source defaulted on the loan, Allied World would pay Westfield gross unearned premium without an audit. Mem. at 11–12; *see* AC ¶ 16; Notice of Financed Premium. In its brief, Allied World contends that Westfield's promise to pay in the Notice of Financed Premium is past consideration because, Allied World contends, Westfield had already made a contract with Primary Source based on the promise to pay the premiums. Mem. at 12–13. However, contrary to the contentions of Allied World, it is not absolutely clear from the Amended Complaint and the documents attached thereto that the contract between Westfield and Primary Source was already formed before Westfield sent the Notice of Financed Premium to Allied World. Specifically, Primary Source signed the Premium Finance Agreement on November 16, 2022, and, according to the Amended Complaint, Westfield mailed the Notice of Financed Premium to Allied World on November 17, 2022. *See* AC ¶¶ 6, 14; Premium Finance Agreement at 1. However, by its terms, the Premium Finance Agreement would not become "a binding contract" until Westfield "mail[ed] a written acceptance" back to Primary Source. Premium Finance Agreement § 5. The Amended Complaint does not contain any allegations fixing that date. As such, drawing all inferences in favor of Westfield, it is possible that Westfield sent Allied World the Notice of Financed Premium before Westfield sent its written acceptance to Primary Source. Allied World stresses that the Notice of Financed Premium states that Westfield "*has entered* into a contract with your insured to advance the premiums on the policy described above." Notice of Financed Premium at 1 (emphasis added); Mem. at 3, 12. However, drawing all inferences in favor of Westfield, it is possible that the language in the Notice of Financed Premium did not precisely reflect the relationships among Westfield, Primary Source, and Allied World at the time it was sent. For example, "the policy described above" is identified as "TBD" in the Notice of Financed Premium. Notice of Financed Premium at 1. Moreover, the Amended Complaint alleges that Allied World issued the policy to Primary Source *after* Westfield

11

**B. Westfield Plausibly Alleges Acceptance by Conduct.**

Allied World argues that, [e]ven if Westfield Bank had made an offer in the Notice [of Financed Premium] supported by valid consideration," Allied World "did not accept the offer." Mem. at 13. Allied World stresses that the signature line on the copy of the Notice of Financed Premium that Westfield attached to the Amended Complaint is blank. Mem. at 13–14. Westfield Bank responds that, irrespective of what state law governs, "a party can accept an offer and form a contract through conduct." Opp. at 9 (citing cases).

It is a basic principle of contract law that "assent may be manifested by . . . conduct." Restatement (Second) of Contracts § 4 (1981). Here, Westfield plausibly alleges that Allied World assented to the Notice of Financed Premium by accepting payment "in full" for all premiums from Westfield, issuing a general liability policy to Primary Source, and, thereafter, cancelling the policy when Westfield issued a Notice of Cancellation to Allied World. AC ¶¶ 18, 22. Allied World is free to argue at later stages of this case that there was, in fact, no meeting of the minds as to Notice of Financed Premium and its conduct did not, in fact, manifest an intent to be bound. Insofar as Allied World argues, for example, that it would have issued the same general liability policy to Primary Source irrespective of whether Westfield promised to (and, allegedly, did) pay all of the premiums in advance, that argument involves factual questions that cannot be resolved on a motion to dismiss. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022). Moreover, the sufficiency of conduct to manifest acceptance of an offer is governed by state law, and, as explained above, it is premature at this stage to determine which state's law governs the Notice of Financed Premium. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).

---

sent Allied World the Notice of Financed Premium, meaning Primary Source was not yet insured by Allied World when the Notice of Financed Premium referred to Primary Source as "your insured." AC ¶ 18. Indeed, the policy itself, which Allied World urges the Court to consider, bears the date November 30, 2022 [ECF No. 20-1 at 5–8].

At this stage, accepting its allegations as true and drawing all reasonable inferences in its favor, Westfield has offered sufficient facts to plausibly allege that Allied World accepted the Notice of Financed Premium by its conduct. *See Iqbal*, 556 U.S. at 678. As such, this case cannot be dismissed on the ground that Allied World did not sign the copy of the Notice of Financed Premium attached to the Amended Complaint.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss [ECF No. 18] is DENIED.

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 18.

**SO ORDERED.**

Date: **September 25, 2025**  
New York, NY

**MARY KAY VYSKOCIL**  
United States District Judge